UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| IN RE: GTM ENERGY PARTNERS, LLC, | } } } |
| Debtor, | } } |
| ROY DOBBINS, | } } |
| Appellant, | } Case No.: 1:14-cv-00817-RDP |
| v. | } } |
| WILLIAM S. KAYE, Plan Administrator, et al., | } } } |
| Appellees. | } |

**MEMORANDUM OPINION**

This matter is before the court on the appeal filed by Roy S. Dobbins from the bankruptcy court's March 6, 2014 Order sustaining objections by the Chapter 11 Plan Administrator, William S. Kaye, to the proof of claim filed by Dobbins on behalf of Southern Energy Development Company, Inc. ("SEDCO").

**I.     Background**

This case involves an October 2013 claim by Dobbins that debtor GTM Energy Partners, LLC failed to pay all royalties owed to SEDCO -- a corporation owned by Dobbins' wife -- in connection with a 2004 mining lease that expired in 2009.

### A.    The 2004 Lease

Lowell Barron and SEDCO were the record owners of the Property when the 2004 Lease was executed. (Bankr. Case Doc. # 741-2). Dobbins, acting on behalf of SEDCO[1], and Barron executed a coal mining lease dated November 4, 2004, in favor of D & E Mining, LLC (the "2004 Lease"). (Bankr. Case No. Case 11-80568-JJR11 (hereinafter "Bankr Case") Doc. # 741-3 at 1, 4; Doc. # 1-4 Dobbins Dep. 60:15 - 61:2). D&E Mining subsequently assigned the 2004 Lease to GTM Energy Partners, LLC ("GTM"), and GTM mined the Barron/SEDCO Property until approximately September 2009. (Doc. # 1-4 Dobbins Dep. 70:6-17). By its own terms, the 2004 Lease expired on November 4, 2009. (Bankr. Case Doc. # 741-3 at 1). The 2004 Lease provides for the following consideration:

> 2.    CONSIDERATION
>
> A.  LESSEE shall pay the LESSOR 10% per ton based on the *Pit Price* and based on the LESSOR owning the mineral rights or at 5% based on the *pit price* if the mineral rights are not owned. All production royalties are to be paid on the twentieth (20th) day of each month for all coal mined and sold from the demised premises during the next preceding month.

(Doc. # 1-4 at p. 119) (emphasis added). The term "Pit Price" is not defined in the 2004 Lease. (*Id*). The term "Sale Price" is later defined to include "BTU Bonus" or "BTU Penalty." (*Id.*).

According to GTM, all royalties due were paid in full at the end of the lease. (Doc. # 1-2 at 24). GTM did not pay the lessors any BTU bonuses or penalties because there was no provision for that in the lease. (Doc. # 1-2 at 25). Following the expiration of the lease in 2009 until October 2013, neither Dobbins nor Barron ever contacted GTM claiming they were owed any money under the 2004 Lease. (Doc. # 1-2 at 24).

---

[1] Dobbins stated he executed the 2004 Lease on behalf of SEDCO, not in his individual capacity, although there was nothing on the face of the 2004 Lease that would have indicated SEDCO had any interest in the Property or 2004 Lease. According to a deed dated April 20, 2011 -- two months after the Debtor filed its bankruptcy petition -- SEDCO conveyed its interest in the Property to Dobbins and his wife in their individual capacities.

### B.     GTM Files Chapter 11 Bankruptcy

On February 16, 2011, more than a year after the 2004 Lease expired, GTM filed a chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Northern District of Alabama, and that filing commenced the underlying bankruptcy case. (Bankr. Case Doc. # 1). When GTM filed its bankruptcy case, neither Dobbins' address shown in the 2004 Lease, nor any other address for Dobbins, was included in the mailing matrix.

In May 2011, the bankruptcy court approved a sale of substantially all of the assets of GTM. (Bankr. Case Doc. # 247 at 1, 16). Shortly after the sale closed, on June 27, 2011, the deadline for filing proofs of claim in the Bankruptcy Case expired. (Bankr. Case Doc. # 695 at ¶ 5). On December 12, 2011, the bankruptcy court confirmed GTM's chapter 11 plan (the "Plan"). (Bankr. Case Doc. # 451). Dobbins was not scheduled as a creditor, and there was no evidence that he received any notice of GTM's bankruptcy proceedings.

The Plan contemplated that, after payment of all allowed claims with interest, and payment of the fees and expenses of the Plan Administrator, the remaining assets of GTM would be turned over to the equity holders of the company. (Bankr. Case Doc. # 349 at 2, 11-16, 18-22). As of September 2013, the Plan Administrator had paid all allowed proofs of claim timely filed in the Bankruptcy Case, with interest at the Plan rate. (Bankr. Case Doc. # 683 at 1-3).

### C.     Dobbins's Proof of Claim

On October 9, 2013, Dobbins filed a proof of claim in the bankruptcy case on behalf of SEDCO (the "Proof of Claim"). (Bankr. Case Claim # 72-1 (Doc. # 687-1); Doc. # 1-1 McGee Dep. 46:2-5). The Proof of Claim asserts an unsecured, pre-petition claim in the amount of $452,606.00, consisting of the following: (a) $52,597.84 for "premiums for BTU which would have been at least 10% of my total royalties received;" (b) $100,009.00 for "coal mined from my

3

property in 2007 and 2008 [that] went to the washer and I was never paid for…it would have been approximately 25% of total mined…for this period;" and (c) $300,000.00 for "damages for trespassing on my property."[2]  In support of the Proof of Claim, Dobbins attached only a prepared summary.  The 2004 Lease was not attached, nor were any other supporting documents. (Bankr. Case Claim # 72-1 (Doc. # 687-1) at 1, 3-4).

On October 23, 2013, the Plan Administrator filed an objection to the Claim (the "Objection").  (Bankr. Case Doc. # 695).  Among other grounds, the Plan Administrator objected to the Claim on the basis that Dobbins failed "to attach a lease or other writing establishing his purported rights to the amount claimed" and, instead, "attached certain historical figures and seeks to extrapolate the amounts he alleges are owed from those amounts."  (Bankr. Case Doc. # 695 at ¶ 17).  Further, the Objection stated that "there is no basis" for the BTU premium claimed and that the claim for washer coal "also is not supported by any evidence."  (Bankr. Case Doc. # 695 at ¶¶ 18-20).

### D. Hearing on the Objection to the Proof of Claim

The bankruptcy court set the Objection for evidentiary hearing on December 5, 2013. (Bankr. Case Doc. # 696 at 1).  At the December 5, hearing, Dobbins had a change of counsel and, at Dobbins's request, the hearing on the Objection was continued over a month until January 9, 2014, in order to allow the parties time to complete discovery.  The bankruptcy court advised all parties that the January 9, 2014 hearing would not be continued.  (Doc. # 1-3 at 7:11-18).

The Plan Administrator promptly initiated discovery in November 2013 and took the depositions of Barron, Dobbins, and McGee, the SEDCO Corporate Representative.  Dobbins

---

[2] Dobbins subsequently waived the $300,000 trespass portion of the Proof of Claim.  (Bankr. Case Doc. # 748 at 4, item 3).

4

did not initiate any discovery until two days before the January 9, 2014, hearing when he issued a subpoena to the Plan Administrator to appear at the hearing and to produce documents. (Bankr. Case Doc. # 736 at 1-3). The bankruptcy court quashed the subpoena. Dobbins has not appealed that ruling. (Bankr. Case Doc. # 753 at 10).

On January 9, 2014, the day of the final evidentiary hearing, Dobbins filed an amended proof of claim (the "Amended Proof of Claim"). (Bankr. Case Claim # 72-2). The bankruptcy court disallowed the Amended Proof of Claim as untimely. Dobbins has not appealed that ruling. (Bankr. Case Doc. # 753 at 1). The bankruptcy court also denied Dobbins's request for a further continuance and proceeded to take testimony and admit certain depositions. The Plan Administrator and Jem-Coal, LLC, one of the equity holders of GTM, objected to the admission of Exhibits 13 and 14 to those depositions because, they asserted, (1) those exhibits are not relevant to the claims asserted in the Proof of Claim, (2) they constitute inadmissible hearsay (for which there is no exception), and (3) they were not properly authenticated. (Bankr. Case Doc. # 741 at 4-5; Doc. # 1-2 at 70:7 – 72:6).

Exhibit 13 to the McGee deposition purports to be a public record of an audit by the Office of Surface Mining for April 1, 2007 through March 31, 2009, dated September 16, 2009 (the "OSM Audit"). (Bankr. Case Doc. # 745-5 at 1). However, some pages of the Audit were not included. The missing pages were marked as Exhibit 14. (Doc. # 1-4 McGee Dep. 82:10-19). These exhibits were not originals or certified copies and no custodian of records testified as to their authenticity. Additionally, Exhibit 13 contains information on coal mined outside the time period for the OSM Audit, and post-dating the term of the 2004 Lease. (Bankr. Case Doc. # 745-5 at 10-11, 13-14, 18-24). Exhibit 14 contains summaries of reported and audited tonnage by permit, only one of which is for the Barron/SEDCO Property, and that permit includes other

5

properties. (Bankr. Case Doc. # 745-6 at 1, 3-5; Doc. # 1-2 at 27:20 - 28:5). Neither Exhibit 13 nor Exhibit 14 references BTU premiums or distinguishes between washer and non-washer coal, the subjects of Dobbins's Proof of Claim. (Bankr. Case Doc. # 745-5 and 745-6).

### E. The Bankruptcy Court's Order

On March 6, 2014, the bankruptcy court sustained the Plan Administrator's Objection to Dobbins's claim. (Bankr. Case Doc. # 753). The Plan Administrator objected to the Claim asserting (1) that the language of the 2004 Lease did not create any entitlement to BTU premiums for the lessor, and (2) that no amounts remained owing under the 2004 Lease. The bankruptcy court held that Dobbins' earnest belief that he did not get paid for BTU premiums and washer coal was simply not sufficient to support his Claim. Dobbins admitted that his Claim was based on speculation and conjecture: "I just pulled that out of my head." (Doc. # 1-4 Dobbins Dep. 139:19-140:1). This testimony, the bankruptcy court held, was sufficient to negate the prima facie evidentiary presumption he initially enjoyed under F.R. Bankr. P. 3001(f), and he never met his burden of proof needed to support his Claim. (Bankr. Case Doc. # 753 at 9).

The bankruptcy court also sustained the Plan Administrator's objections to Exhibits 13 and 14, concluding those exhibits were not authenticated and are inadmissible hearsay. The bankruptcy court also noted that it was difficult to determine if all the pages of the audit were included and even whether all the pages pertain to the same audit. (Bankr. Case Doc. # 753 at 11).

### II.  Standard of Review

This court has jurisdiction to hear appeals from orders of the Bankruptcy Court. 28 U.S.C. § 158(a). A bankruptcy court's findings of fact are reviewed for clear error and its legal

6

conclusions de novo. *Educ. Credit Mgmt. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007).

A finding of fact is clearly erroneous even when there is evidence to support it, if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573 (1985) (citation, internal quotation marks, and alterations omitted).  As the reviewing court, this court must give "due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses." *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996). An appellate court may affirm the lower court "where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected" by the lower court. *Bonanni Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1561 (11th Cir. 1992).

"Whether an evidentiary presumption has been rebutted is a question of fact reviewed for clear error." *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000). Evidentiary rulings are to be reviewed under the abuse of discretion standard. *See In re Moore*, 165 B.R. 495, 498 (M.D. Ala. 1993) (citing *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc*., 7 F.3d 986, 993 (11th Cir. 1993) ("A [trial court's] evidentiary rulings are not disturbed unless there is clear showing of abuse of discretion.")).

**III.  Discussion**

The court will not sugar coat it — Appellant Dobbins' description of the issues to be decided in this appeal is virtually unintelligible. (Doc. # 5 at 6-7). However, the Plan Administrator has stated (and this court agrees) that the following are the questions that must be resolved in reviewing the Bankruptcy Court:

1. Whether the bankruptcy court erred in holding that the initial presumption of validity to Dobbins' proof of claim was rebutted in this case;

2. Whether the bankruptcy court properly considered the deposition testimony of Dobbins and Charles McGee; and

3. Whether the bankruptcy court abused its discretion in excluding Exhibits 13 and 14.

### A. The Initial Presumption of Validity Was Rebutted

A verified proof of claim against a bankruptcy estate is presumed valid until the debtor objects. 11 U.S.C. § 502(a). The objection must contain some substantial factual basis to support its allegation of impropriety, and overcome the creditor's prima facie case. *In re Bagget Bros. Farm Inc.*, 315 Fed. Appx. 840, 843 (11th Cir. 2009) (quoting *Matter of Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir. 1977) and *Matter of Multiponics, Inc.*, 622 F.2d 709, 714 (5th Cir. 1980)) (quotation marks omitted).[3] If the debtor satisfies his obligation, the burden then shifts back to the creditor "to prove the validity of the claim by a preponderance of the evidence." *Id.* (quoting 4 Collier on Bankruptcy ¶ 502.02[3][f] (15th ed. rev. 2007)).

Only proofs of claim complying with Bankruptcy Rule 3001 are entitled to the initial presumption of validity. Fed. R. Bankr. R. 3001(f). Subsection (c)(1) of Bankruptcy Rule 3001 requires that when a claim is based on a writing (such as the 2004 Lease in this case), a copy of such writing shall be filed with the proof of claim. Fed. R. Bankr. R. 3001(c)(1). Thus, although the bankruptcy court did not rely on this ground, the failure to attach a supporting contractual document, such as the 2004 Lease to the proof of claim, would result in a loss of the presumption of validity and relieve the objecting party of the burden of going forward. Here, the 2004 Lease

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

was not filed with the Proof of Claim, and therefore, it does not appear that the initial presumption of validity should have even been applicable in this case.

But even assuming that the evidentiary presumption applies, GTM satisfied its burden of going forward by proffering evidence that amounts due under the lease were paid and by credibly calling into question Dobbins's assertion that there was any outstanding balance. *See In re Bagget Bros. Farm Inc.*, 315 Fed. Appx. at 843; *In re Garvida,* 347 B.R. 697, 706 (9th Cir. BAP 2006).

The language of the 2004 Lease did not provide for the payment of BTU premiums. The 2004 Lease (which again was not attached to the Proof of Claim) provides for the following consideration:

> 2.   CONSIDERATION
>
> A.  LESSEE shall pay the LESSOR 10% per ton based on the *Pit Price* and based on the LESSOR owning the mineral rights or at 5% based on the *pit price* if the mineral rights are not owned. All production royalties are to be paid on the twentieth (20th) day of each month for all coal mined and sold from the demised premises during the next preceding month.

(Doc. # 1-4 at p. 119) (emphasis added). The term "Pit Price" is not defined in the 2004 Lease. (*Id*). The term "Sale Price" is later defined to include "BTU Bonus" or "BTU Penalty." (*Id.*). However, BTU Bonus is not specified as a part of the Pit Price. This evidence credibly called into question whether Dobbins was entitled to the amounts he claimed were owed.[4]

Further, GTM presented testimony that all royalties due were paid in full at the end of the lease. (Doc. # 1-2 at 24). GTM did not pay the lessors any bonuses or penalties because there was no provision for that in the lease. (Doc. # 1-2 at 25). Furthermore, the record evidence demonstrates that, following the expiration of the lease in 2009 until October 2013, neither

---

[4] A reviewing court may affirm on any grounds supported by the record. *Parks v. City of Warner Robins*, 43 F.3d 609, 613 (11th Cir. 1995).

Dobbins, nor Barron, ever contacted GTM claiming they were owed any money under the 2004 Lease. (Doc. # 1-2 at 24).

Giving "due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses," *In re Englander*, 95 F.3d at 1030, this court cannot say that the bankruptcy court erred in holding (1) that any presumption of validity that may have attached to Dobbins's proof of claim was rebutted in this case, and (2) that Dobbins failed to present sufficient credible evidence to support his claim. *See In re Garner*, 246 B.R. at 619.

### B. The Bankruptcy Court Properly Considered the Deposition Testimony of Dobbins and Charles McGee

Dobbins next contends that the bankruptcy court erroneously failed to consider all of the deposition testimony of Dobbins and McGee, particularly with respect to Exhibits 13 and 14. However, the express language of the bankruptcy court's Order states: "The Court has considered the pleadings, including Dobbins' proof of claim and exhibits thereto, the evidence presented at the hearing, including *testimony given in court and through depositions*, and arguments of counsel, and for the reasons that follow, the Court will sustain the Objection to Claim." (emphasis added) (Bankr. Case Doc. # 753 at 2). A trial court need not recite every shred of evidence it considered. *Holton v. City of Thomasville School Dist.*, 425 F.3d 1325, 1353-54 (11th Cir. 2005); *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 322 n.12 (4th Cir. 2006) ("We will not assume, however, that simply because the district court did not mention the report in its written order it failed to consider the evidence.").

As discussed above, a bankruptcy court's findings of fact are reviewed for clear error. Clear error is a deferential standard of review. *See, e.g., Manning ex rel. Manning v. Sch. Bd.*, 244 F.3d 927, 940 (11th Cir. 2001). As the Supreme Court has explained, a "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). The law is well settled that "[i]f the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing] court … may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson*, 470 U.S. at 573-74. Indeed, this court may reverse the bankruptcy court only when "on the entire evidence" the court is "left with the definite and firm conviction that a mistake has been committed." *Id.* at 573 (marks and citation omitted).

After reviewing the record in this matter, although there may have been conflicting evidence, this court is not left with the conviction that a mistake has been committed and has not discerned any clear error.

        **C.**    **The Bankruptcy Court Did Not Abuse its Discretion When it Excluded Exhibits 13 and 14.**

Although the bankruptcy court admitted the depositions taken in this matter into evidence, it did not admit the deposition exhibits. (Doc. # 1-2 at 70:7 – 76:19, 108:10 – 110:24). At the evidentiary hearing, the bankruptcy court expressly stated "there are no exhibits to those depositions that have come in." (Doc. # 1-2 at 76:18-19). The court then independently evaluated the objections after briefing by counsel. (Doc. # 1-2 at 108-110; Bankr. Case Doc. # 753 at 10-11).

Evidentiary rulings are to be reviewed under the abuse of discretion standard. *U.S. Anchor Mfg., Inc.,* 7 F.3d at 993. As to Exhibits 13 and 14, the bankruptcy court sustained the objections to their admission because they were not authenticated and they contain inadmissible hearsay. The bankruptcy court also noted that it was "difficult to determine if all the pages of the

11

audit are included and even whether all the pages pertain to the same audit." (Bankr. Case Doc. # 753 at 10-11). No competent witness testified that these exhibits were true and correct copies of what they purported to be. Moreover, on the face of the exhibits there appear to be mismatched or internally inconsistent dates and page numbers, handwritten notes, and other indicia of tampering.

The exhibits at issue purport to be records of the Office of Surface Mining, a public office. Under Federal Rule of Evidence 803(8), a "record or statement of a public office" may be excepted from the general rule excluding hearsay if it meets certain conditions and "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). However, the exhibits proffered indicate a lack of trustworthiness on their face. For example, Exhibit 13's cover page states that the audit covers April 1, 2007 to March 31, 2009, and the audit is dated September 16, 2009. (Bankr. Case Doc. # 745-5 at 1). However, Page 12 includes information for the third quarter of 2009 (the months of July, August, and September), which is later than the dates claimed to be covered by the audit. (Bankr. Case Doc. # 745-5 at 12). Pages 13 through 15 include information from 2010, as do pages 18 through 21, and Page 22 begins discussing 2011. (Bankr. Case Doc. # 745-5 at 13-15, 18-22). And Exhibit 14 purports to be a five page document, but contains seven pages. (Bankr. Case Doc. # 745-6 at 1-7).

The bankruptcy court acted within its discretion to deny admission of these documents under Rule 803(8). *Wilson v. Attaway*, 757 F.2d 1227, 1245 (11th Cir. 1985). Having reviewed these exhibits in conjunction with the record in this matter, the court cannot say that the bankruptcy court abused its discretion in excluding these documents. *U.S. Anchor Mfg., Inc.,* 7 F.3d at 993.

## IV.     Conclusion

For the foregoing reasons, the bankruptcy court's March 6, 2014 Order sustaining objections by the Chapter 11 Plan Administrator, William S. Kaye, to the proof of claim filed by Dobbins on behalf of SEDCO is due to be affirmed with the costs of these proceedings taxed to the Appellant.

A separate order in accordance with the Memorandum Opinion will be entered.

**DONE** and **ORDERED** this December 9, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE